President, &c. of the Merchants' Bank *v.* Spalding.

[NEW-YORK GENERAL TERM, December 1, 1851. *Edmonds, Mitchell* and *King*, Justices.]

————————◦●◦————————

## THE PRESIDENT, &c. OF THE MERCHANTS' BANK *vs.* SPALDING.

The act of April 20th, 1830, (*Laws of* 1830, *ch.* 295,) was in force on the 3d of November, 1845; and the circulation in this state, of the notes of a foreign corporation, of a less denomination than five dollars, was, at that time, illegal.

The bare knowledge, on the part of a lender, that the borrower of the legal currency of New-Jersey, intended to use it in this state, where its circulation would be illegal, would not so far vitiate a contract made in New-Jersey, and which would be valid by the laws of that state, as to authorize the courts of this state to refuse to enforce it.

It is a principle, as old as the common law, that courts ought not to lend their aid in compelling the performance of contracts which arise *ex turpi causa.*

As a general rule, the courts of one state, acting upon the principle of national comity, will enforce contracts made in another state, by the laws of which they are valid; unless the rights or interests of the state where the contract is sought to be enforced, or of its citizens, will be injured.

If a contract is made in another state, with a view to its completion here, there is no doubt that the parties will be charged with knowledge of the law of this state; and the maxim, "*ignorantia legis neminem excusat,*" will apply.

But, where the contract is completed in another state, and when the whole offense pretended, consists of the mere knowledge of an intent on the part of another to do an act contrary to the statutory laws of this state, it can not be said that a party possessing such knowledge, is guilty of *actual* moral turpitude, unless he also knew that the act was illegal.

THIS case came before the court on a bill of exceptions, taken by the defendant, to the ruling of the justice who presided at the trial of the cause, and to his refusal to charge the jury as requested by the defendant.

The cause was tried at the New-York circuit, in October, 1847, before Mr. Justice Morehouse and a jury. The plaintiff's counsel introduced in evidence, a promissory note, dated Lockport, November, 3d, 1845, drawn by one Jackson Pound, by which he promised to pay, four months after date, to the order of L. A. Spalding, twenty-eight hundred and seventy-five dollars, at the Farmers' and Mechanics' Bank of Rahway, N. J. for value received. The note was signed by the maker, and indorsed by the payee, " L. A. Spalding, Lockport." To this note, a stipulation, in writing, was annexed, signed by the defendant's attorney, admitting the signatures of the maker and of the indorser to be genuine : that the note was duly presented for payment, on the 6th March, 1846, and payment refused ; that the note was thereupon protested, and notice of such presentment, non-payment and protest duly given to the indorser. It was also admitted by the defendant's counsel, that the amount of principal and interest due on the note, at the time of the trial, (23d October, 1847,) was $3,208,18. The plaintiff's counsel rested their case ; and the defendant's counsel then proved by the testimony of Jackson Pound, the maker of the note, and of Frederick King, cashier of the Farmers' and Mechanics' Bank of Rahway, taken on commission, that the note was discounted by the said bank, on the 3d or 4th November, 1845, in the banking house, in Rahway, in the usual course of business ; that when the said note was laid before the board of directors for discount, it was said by some one or two of the directors present, in the course of conversation relative to said note, that Jackson Pound, the offerer of the note, had purchased, or was going to purchase flour in the western part of the state of New-York, and would use the small bills of said bank, received for the proceeds of said note, to pay for said flour ; that full half of the bills or notes paid on the discount, were five dollar notes, and the other notes were 3's, 2's and 1's ; and that the money was

sent in a package to Lyman A. Spalding, Lockport, state of New-York; and the direction on the package, was written at the bank, by the cashier. The witness, Pound, also testified: That when he gave the note to the president of the bank, to be by him presented for discount, he told the president that the money was going out west, and that if it would be any benefit, he would take small bills. The president told him to come down in about a week, and he would let him know; this conversation took place in a street, in the city of New-York, and no other person was present. Upon this evidence, it was insisted, on behalf of the defendant, that he was entitled to a verdict. But the justice decided to the contrary, and the defendant's counsel excepted to such decision; and then prayed the justice to charge the jury; 1. That the circulation in this state, of bills issued by foreign corporations or associations, under the denomination of five dollars, was illegal: 2. That if the note in question was discounted to the intent, and with notice that the bills under five dollars were to be put in circulation in this state, then the plaintiffs could not recover: 3. That the discounting the note, knowing that the proceeds were to be taken, in part, in bills under five dollars, and circulated in New-York, and paying over the proceeds, partly in bills under $5, together with the acceptance of such bills, sealed up and directed by the bank in Rahway, to the defendant in New-York, was evidence of an agreement that the bills should all be circulated in New-York: 4. That there not being any authority to that bank to issue bills for circulation as money, the plaintiffs could not recover. But the justice refused so to charge, and the defendant's counsel excepted. The justice then charged the jury, that the circulation, in this state, of bills or notes issued by foreign corporations or associations, under the denomination of five dollars, was not illegal at the time of the transaction mentioned in the evidence; that the evidence given on behalf of the plaintiffs, fully proved the case made on their behalf by the pleadings; that the evidence given on behalf of the defendant, was not sufficient to bar the plaintiffs' right of recovery, and that they were entitled to a verdict for the amount of the note: and he directed the jury to find a

verdict for the plaintiffs to the amount of the note.   The defendant's counsel excepted to all and every part of the charge.   The jury rendered a verdict against the defendant, for $3,208 18 and six cents costs.

*B. W. Bonney,* for the plaintiffs.

*A. C. Bradley,* for the defendant.

EDWARDS, J.   The consideration of the promissory note, upon which this suit was brought, consisted of a loan made by the Farmers' and Mechanics' Bank of Rahway, in the state of New Jersey, of its own notes, to the defendant.   It appears from the testimony which is set out in the bill of exceptions, that a part of the notes thus lent, were of a denomination of less than five dollars.   It also appeared that before the loan was made, the agent of the defendant had announced that the notes were to be used in the purchase of flour in the western part of this state, and that in the course of the conversation in the board of directors of the bank, relative to the discount of the defendant's note, it was stated that the notes of the bank were to be thus used. It was proved upon the trial of the cause, that this suit was brought for the account and benefit of the Farmers' and Mechanics' Bank, and that no consideration for the defendant's note was ever paid by the plaintiffs.

When the case was submitted to the jury, the defendant insisted that at the time when the note in suit was given, the circulation in this state of the bills or notes of a foreign corporation, of a less denomination than five dollars, was illegal, and that, as it was known to the board of directors of the Farmers' and Mechanics' Bank, that the defendant intended to use the notes which he was to receive, in this state, and that, as a portion of these notes were of a less denomination than five dollars, the plaintiffs were not entitled to recover.

The first question to be considered is whether the circulation of the bills of a foreign corporation, of a less denomination than five dollars, was illegal at the time the note in suit was given.

By the act of April 20th, 1830, it was provided that it should be unlawful, after the first day of September then succeeding, for any person " to pass, circulate or receive in payment, within this state, any bank note, bill or promissory note, for the payment of money, issued by any state or sovereignty, or by any body politic or corporate, not authorized to issue the same, in and by any of the laws and statutes of this state, under the denomination of five dollars." The statute also declared that a penalty should be imposed upon any person who should violate its provisions. (*Laws of* 1830, *p.* 357, *ch.* 295, § 1.) On the 31st March, 1835, another act was passed, prohibiting the circulation of the bills or notes of " any body corporate," of certain specified denominations, after the periods which were therein particularly designated; and, in express terms, it repealed so much of the act of April 20th, 1830, as was inconsistent with it. (*Laws of* 1835, *p.* 27, *ch.* 46.) On the 28th February, 1838,(*a*) another act was passed, which repealed in express terms the previous act of 1835, but made no allusion to the act of 1830. The result was that by the repeal of the repealing act of 1835, the act of 1830 was revived and remained in force, except so far as it was repealed by implication by the act of 1838; that is, except so far as the act of 1838 was inconsistent with it. After this the act of February 21st, 1839,(*b*) was passed, which, in express terms repealed the act of 1838, and also the act of 1835, but made no allusion to the act of 1830. The effect of this was to revive that act so far as it had been repealed by either of the subsequent acts, and it remained in full force at the time when the note on which this suit is brought was given; and the circulation in this state of the notes of a foreign corporation, of a less denomination than five dollars, was illegal.

It will be seen by reference to the testimony, that the note in suit was discounted for the defendant by the Farmers' and Mechanics' Bank, in the course of its ordinary business, and it is not pretended that the circulation of notes of a less denomina-

(*a*) *Laws of* 61st *Session, chap.* 51,    (*b*) *Laws of* 62d *Session, chap.* 80,
*page* 26.                                    *page* 26.

tion than five dollars, was illegal by the laws of New Jersey. It also appears that it was no part of the agreement between the bank and the defendant, that the notes received by him should be circulated in this state; and it is not pretended that the bank did any act in aid or furtherance of their circulation here. The question which this state of facts presents for our consideration is, whether the bare knowledge that the borrower of the legal currency of New Jersey intended to use it in this state, where its circulation would be illegal, would so far vitiate a contract made in New Jersey, (and which would unquestionably be valid by the laws of that state,) as to authorize the courts of this state to refuse to enforce it.

It is a principle as old as the common law, that courts ought not to lend their aid in compelling the performance of contracts which arise *ex turpi causa.* And, in the application of this principle, it has been held, that even where the consideration of the contract is, in itself good, still, if the party who seeks to enforce it, knew at the time that it was entered into, that the property sold under it was intended to be used by the buyer for an illegal purpose, the contract is so far "tainted with turpitude," that it will not be enforced. (*Lightfoot* v. *Tenant,* 1 *Bos. & Pull.* 551.) And in a case where a person sold drugs to a brewer, knowing that they were intended to be used in the brewing of beer, contrary to an act of parliament, it was held that the vendor was not entitled to recover the money due upon the sale. (*Langton* v. *Hughes,* 1 *Maule & Selw.* 593.) In these cases the court did not hold that the contract was illegal, but that, under the circumstances, they would not lend their aid to enforce it. But there is another class of cases, which are more strictly analogous to the one before us, in which courts have refused to look beyond the contract itself. Thus when goods were sold abroad by a foreigner, to a British subject, and there was a complete delivery abroad, it was held that the vendor was entitled to recover the price in a suit brought in England, although he knew that the vendee intended to smuggle the goods into England; (*Holman* v. *Johnson, alias Newland,* 1 *Cowp.* 341;) and a similar decision was made in a recent case.

(*Pellecat* v. *Angell*, 2 *Cromp. M. & Rosc.* 311.) It is true that both of them were cases in which the illegal act intended was a breach of the revenue laws, which, from what Judge Story calls "a very questionable subserviency to commercial gains," have never been treated with any particular consideration in the course of international jurisprudence. But although in the latter case some stress seems to have been laid upon that fact, still the court did not, in either case, rest its opinion upon that ground. It was held, however, in each of the cases, that if the vendor had done any act in furtherance of the illegal intention, as if he had undertaken to send the goods to England, or had taken any part in the illegal adventure, as in packing them in prohibited parcels, or otherwise, the plaintiff would not be entitled to recover.

As a general rule the courts of one state, acting upon the principle of national comity, will enforce contracts made in another state, by the laws of which they are valid, unless the rights or interests of the state, where the contract is sought to be enforced, or of its citizens, will be injured. (*Greenwood* v. *Curtis*, 6 *Mass. R.* 358. *Ohio Insurance Company* v. *Edmonson*, 5 *Louis. Rep.* 295.) If, in the case before us, the Farmers' and Mechanics' Bank had done any act in furtherance of the defendant's intention, it would undoubtedly be against good policy for this state to lend its aid in enforcing the contract. But, from all that appears, the bank not only did no act in furtherance of the defendant's intention, but its officers were not aware that the act intended by the defendant was illegal. If a contract is made in another state, with a view to its execution here, there is no doubt that the parties will be charged with knowledge of the law of this state, and the maxim, *ignorantia legis neminem excusat* will apply. (*Executors of Cambioso* v. *Assignees of Maffett*, 2 *Wash. Circ. Ct. Rep.* 98.) But where the contract is completed in another state, and where the whole offense pretended, consists of the mere knowledge of an intent on the part of another to do an act contrary to the statutory laws of this state, it cannot be said that a party possessing such knowledge is guilty of *actual* moral turpitude, unless it appear that he also knew that the act was illegal. And although, as a matter of

President, &c. of the Merchants' Bank v. Spalding.

policy, it may be necessary and proper to charge all parties to a contract made, or to be executed, within this state, with a knowledge of its laws, could we be said to exercise a just adherence to the principle of national comity in refusing our aid in enforcing a contract which is valid in itself, and where no *actual* moral turpitude is pretended, by the arbitrary application of a legal maxim ?

In the cases above cited, the contract was enforced, although the plaintiff knew that the intended act was contrary to law.

We think that the justice before whom this cause was tried was correct in charging the jury that the matters set up by the defendant, did not create a bar to the plaintiffs' right of recovery ; and that the motion for a new trial should be denied.

EDMONDS, P. J. The refusal of the judge to rule as requested is of no consequence, because, unless the note was discounted upon an illegal contract, so as to render it void, it was quite immaterial whether the issue or circulation of small bills was unlawful.

Now, I am well satisfied, that the note was not discounted upon any such illegal contract. It was not attached, as a consideration to the loan, that small bills should be taken. Their being so taken was, at most, a request on the part of the lender, and not a part of the contract of loan, and did not, therefore, affect it. The motion for a new trial should be denied.

MITCHELL, J. concurred.

Motion for new trial denied, with costs.

[NEW-YORK GENERAL TERM, December 1, 1851. *Edmonds, Edwards* and *Mitchell*, Justices.]