# SUPREME COURT.

ZACHARIAH E. SIMMONS agt. BENJAMIN WOOD, HENRY CATLIN and others.

A trust deed was made and executed, in October, 1863, between the parties hereto — plaintiff and defendants, Richard France, William C. France, Zachariah E. Simmons, Benjamin Wood and Charles H. Murray of the first part, and Zachariah E. Simmons, Lewis Davis and Charles H. Murray of the second part, in which it was recited that the parties of the first part had assigned to the parties of the second part certain lottery grants, privileges and franchises, and also certain printing-presses, plates, types, material appurtenant thereto, and other personal property, as set forth in three several assignments, which by the trust deed were declared to be made to said Simmons, Davis and Murray, as trustees for certain purposes therein specified, and to hold the same for ten years from September 1, 1863, and for that time to conduct and carry on the business according to their best ability and discretion, and at the end of the ten years to reassign the grants, privileges and property unto the respective parties by whom they had been assigned, subject however to the revocation of the trust as described in the deed.

After stating what proportion of the profits of the business each one was to have, and his consequent interest therein, it provided that during the term the parties representing seventy-five per cent of the interest might revoke the trust, by written notification to the trustees, whereupon it should become the duty of the trustees forthwith to wind up and settle the trust business and reassign the grants and property to said parties, by whom they were conveyed, or their legal representatives.

On the 15th December, 1869, the plaintiff, Simmons, verified his complaint in this action, in which he asserted that the business under the trust deed to that date, had been terminated by the parties who owned and represented seventy-five per cent of the divisible interests in pursuance of the trust deed. That the business was fully legalized in and by certain states which had authorized the lottery grants, and that as property having the same nature as other personal property recognized by those states, it was of great pecuniary value.

Simmons agt. Wood.

On the 16th December, 1869, late at night, on this complaint and affidavit an *ex parte* order was obtained from Mr. justice GEORGE G. BARNARD of the supreme court, appointing John Morrisey a receiver of all the property appertaining to the business, and directing all parties to assign their interests to the receiver, he having full power and authority to dispose of such property at public or private sale, subject to the orders of the court; also said order contained an injunction against all the defendants from interfering with such property and business.

On the morning of the 17th December, 1869, before any of the defendants knew of, or had been served with the summons in this action, the receiver, Morrisey, sold the grants and property referred to in the order at private sale, in the lobby of the Hoffman House, for the price of $25,000, of which, $5,000 were cash, and the residue secured by the notes of the purchaser, William L. Simmons, a brother of the plaintiff, payable at different times, from four months to two years.

This motion includes not only an application to vacate the order appointing the receiver, but also to set aside the sale made by him, and also to set aside a subsequent order, substituting Felix McClosky as receiver in place of Morrisey — notice of the application having been given to the plaintiff's attorney, to the receiver, Morrisey, and to William L. Simmons, the purchaser at the receiver's sale.

*Held*, that no transfer of the interests sold could properly be made by the receiver until his report of sale was made, and an order of confirmation granted on notice to the parties who had appeared in the action. Any transfer before such confirmation would be unauthorized, and any payment by the purchaser before an order confirming the sale would be at the risk of the purchaser.

*Held*, also, that there was no case for a receiver upon the complaint and affidavit. The utmost which judicial discretion should have authorized was an order to show cause, so that defendants could have been heard.

If the deed had been set forth in the complaint, it would have been discovered that no receiver was proper, and that on a revocation of the trust the trustees were empowered to wind up the existing business, and required to retransfer the property.

*Held*, that the order for the receiver, obtained as it was late at night, and the private sale made next morning by the receiver, without notice to the defendants, Wood and Colton, were fraudulent steps as against them and should be set aside.

*Held*, also, that no judicial sanction should be given to the exploit which has resulted in a supposed judicial sale, that cannot be characterized otherwise than as unjustifiable, and made under such circumstances as will prevent confirmation by the court. It was too plain for argument that such a sale should be set aside.

Various objections were presented and urged to the granting of the motion,

Simmons agt. Wood.

which were examined by the court, and decided adversely to the plaintiff, the last of which was, that lottery grants are not property and are forbidden in this state, and anything connected with them was illegal, worthless and void.

*Held,* that it is a principle as old as the common law, that courts ought not to lend their aid in compelling the performance of contracts which arise *ex turpi causa;* that whenever a contract or transaction is tainted with turpitude it cannot be enforced. But if it is sought to apply these and similar principles to the claims made by the defendants, Wood and Colton, in respect of the lottery grants, etc., which are the subject of the action, does it not equally apply to the plaintiff; and what right had he therefore to call on the court to appoint a receiver?

Whatever may be said of the lottery grants and franchises, there was other property set forth in the deed of trust and referred to in the complaint, covered by the order and made the subject of the sale, which came within the protection of law, although its chief value, probably, consisted in the use to which it was applied in the lottery business.

Lottery grants and franchises were based on certain statutes of Missouri, Kentucky, Delaware and Georgia, and were lawful grants and property according to the laws of those states, as was formerly the case under the statute laws of this state, but which are now repealed, and lotteries are now prohibited here as contrary to morality and public good.

While it must be admitted the business of lotteries, which the above named states license, could not be lawfully carried on here, still it would seem that when the grants are the subject of litigation in this state the courts here, within the rule of comity, would extend to them protection as rights of the states which created them.

*New York Special Term, June,* 1873.

MOTION by defendants Wood and Colton, to vacate certain orders appointing receivers, and to vacate a sale made by John Morrisey, as receiver of lottery grants and franchises, and other property.

JAMES EMOTT *and* H. F. PULTZS, *for the motion.*
J. K. PORTER *and* WM. D. HENNEN, *opposed.*

FANCHER, *J.* On the fourteenth day of October, 1863, an instrument was executed by and between Richard France, William C. France, Zachariah E. Simmons, Benjamin Wood and Charles H. Murray, of the first part, and Zachariah E.

Simmons, Lewis Davis and Charles H. Murray, of the second part. It was recited in the instrument that the parties of the first part had assigned to the parties of the second part certain lottery grants, privileges and franchises, and also certain printing-presses, plates, types, material appurtenant thereto, and other personal property, as set forth in three several assignments, which, by said instrument, were declared to be made to said Simmons, Davis and Murray, as trustees, for certain purposes therein specified. The said instrument or trust deed authorized the trustees to hold the lottery grants and privileges, and other property assigned, for ten years from the first day of September, 1863, and for that time to conduct the business thereunder according to their best ability and discretion; and at the end of the term to reassign the grants, privileges and property unto the respective parties by whom they had been assigned, subject, however, to the revocation of the trust as hereafter mentioned.

The net profits of the business were to be divided at the end of each month among the parties, in the following proportions: nine per centum of the whole to William C. France; of the residue, thirty-nine and three-fourths per cent to Benjamin Wood; ten per cent to Richard France; ten and one-half per cent to Charles H. Murray; and thirty-nine and three-fourths per cent to Zachariah E. Simmons. These proportions indicate the relative interest of the parties in the adventure at that time.

The trust deed provided that, during the term, the parties representing seventy-five per centum of the interest might revoke the trust, by written notification to the trustees; whereupon it should become the duty of the trustees "forthwith to wind up and settle the business then current under the trust and agreement, and thereupon to reassign the said lottery grants, privileges and property, then remaining in their hands, unto the several parties by whom the same were conveyed to the trustees, or their legal representatives."

By the said trust deed it was further agreed and declared

that any lottery grant or franchise, or interest in any lottery grant or franchise, which might thereafter be acquired by the parties or any of them, should be forthwith conveyed to the trustees, under the penalty of a forfeiture of his or their portion of the divisible interest stated in the trust deed, and the amount so forfeited should be divided among the other parties.

On the fifteenth of December, 1869, Zachariah E. Simmons verified his complaint in this action, in which he asserts that the business under the said deed of October 14, 1863, and under said lottery grants and franchises, had been carried on under the name of C. H. Murray & Co. up to the fourth December, 1869, at which latter date he alleges it was terminated by the parties who owned and represented seventy-five per centum of such divisible interest, in pursuance of their written direction and notification to the trustees conformably to the provisions of the trust deed.

The plaintiff further asserts that the business aforesaid is fully legalized in and by certain states, which had authorized the lottery grants, and that the same were lawful property in those states; that contracts and transactions relating to and growing out of such grants are upheld and sanctioned by the laws of said states, and that as property, having the same nature as other personal property, they have been and are of great pecuniary value.

The complaint contains an allegation, that whilst the said Wood was subject to the terms of the trust, he acquired various lottery grants and franchises which he had refused to assign to the trustees, although requested so to do, and thereby he had forfeited all his interest in the grants and property, and all rights whatever, held under the said deed of trust.

Upon this complaint, and an affidavit verifying the allegations contained therein, the plaintiff procured, on the sixteenth of December, 1869, from GEORGE G. BARNARD, one of the justices of the supreme court, an *ex parte* order appointing John Morrisey a receiver of all the property appertaining to the business carried on under the name of C. H. Murray

Simmons agt. Wood.

& Co., and of all the other business referred to in the complaint; directing all parties to assign their interests to the receiver, and granting to him, as receiver, full power and authority in his discretion to sell and dispose of, at public or private sale, all and singular the said legislative grants, charters, franchises, choses in action, estate and effects, and the said business and good-will thereof, subject to the orders of this court; and the said order also contained an injunction against all the defendants, restraining their interference with the said grants, business or property.

It is asserted on this motion, and not denied, that judge BARNARD's order was granted out of court, late at night of the 16th December; and that on the next morning, before any of the defendants had been served with the summons or knew of the commencement of the action, the receiver, Morrissey, sold the grants and property referred to in the order at private sale in the lobby of the Hoffman ' House for the price of $25,000, of which $5,000 were cash and the residue secured by the notes of the purchaser, William L. Simmons, a brother of the plaintiff, payable at different times from four months to two years.

The summons in this action was served on the defendant, Wood, on the seventeenth, and on the defendant, Colton, on the 18th December, 1869. No expedition, which either of them could employ, was available to interfere with the sale made by the receiver, for it took place before either was aware of his appointment or of the commencement of this action. It was stated on the argument of this motion that the sale thus made by the receiver for $25,000 covered an interest which had, during the preceding thirteen months, yielded large profits, and, according to the verified allegations of the defendants, the price at the sale was grossly inadequate.

, So soon as information of the receivership was given to the defendants an order to show cause why it should not be vacated, and containing a stay of proceedings, was procured and served, and thereafter the motion was argued before

judge CARDOZO at special term, and on the 26th January, 1870, submitted for his decision, but he went out of office without any decision of the motion.

On the 29th January, 1870, an *ex parte* order was obtained confirming the sale by the receiver, but the order of confirmation was vacated, after argument by Mr. justice BARRETT, on the 18th November, 1872.

After the resignation of judge CARDOZO, leaving the motion to vacate the receivership undecided, a notice of the present motion was given, which includes not only an application to vacate the order appointing the receiver, but also to set aside the sale made by him; and also to set aside a subsequent order substituting Felix McClosky as receiver, in place of Morrisey. Notice of the application has been given to the plaintiff's attorney, to the receiver, Morrisey, and to William L. Simmons, the purchaser at the receiver's sale.

The *ex parte* order of December 16, 1869, appointing the receiver, contained an authority to him to sell at public or private sale, in his discretion, the grants, franchises and property in question, with this express reservation, " *subject to the orders of this court.*" No transfer of the interests sold could, therefore, properly be made by the receiver until his report of sale was made and an order of confirmation granted on notice to the parties who had appeared in the action. Any transfer before such confirmation would be unauthorized; and any payment by the purchaser before an order confirming the sale would be at the risk of the purchaser (*Wambaugh* agt. *Gates*, 4 *Seld.*, 138, 148 ; 9 *Maryl.*, 229 ; 11 *Ves.*, 559 ; 13 *Ves.*, 518 ; 2 *Ves., Jr.*, 335 ; 1 *Jac. & W.*, 639).

There was no case for a receiver upon the complaint and accompanying affidavit. The utmost which judicial discretion should have authorized was an order to show cause, so that the defendants could have been heard.

The complaint did not set forth the trust deed in *haec verbae*, nor was a copy annexed. Had the deed been set forth it would have been discovered that no receiver was

proper, and that, on a revocation of the trust, the trustees were empowered to wind up the existing business and required to retransfer to the owners their several shares in the grants, franchises and property.

The complaint does not aver that there was any wrongful interference, on the part of the defendants, with the duties of the trustees. Nor does it show what title or interest the plaintiff had; nor is there any allegation of insolvency, on the part of the defendants, nor of danger to the property or interests concerned. A receiver in such a case, before answer, should not be appointed (*West* agt. *Swan*, 3 *Edw. Ch. R.*, 420; *Lindley on Part.*, 849–858; *Smith* agt. *Lawe*, 1 *Edw. Ch. R.*, 33). Here the plaintiff himself was one of the trustees, and, according to his own averment, he was the only trustee in the state authorized to conduct the business and manage the property. He does not complain of any want of power to execute the trusts with which he was charged, and the procurement of an order for a receiver, under the circumstances, and the surrender of the property to him, seem like plain violations of his duty as a trustee.

Upon the affidavits read on this motion, it appears sufficiently plain that the order for the receiver, obtained late at night, and the private sale made the next morning by the receiver, without notice to the defendants Wood and Colton, were fraudulent steps as against them; and, however technically authorized by the forms of legal procedure, are, in fact, hostile to all principles of equity, and in conflict with the due and ordinary proceedings, in a court of justice. I do not think any judicial sanction should be given to the exploit, which has resulted in a supposed judicial sale, that cannot be characterized otherwise than as unjustifiable, and made under such circumstances as will prevent confirmation by the court.

It seems almost too plain for argument that such a sale should be set aside. It has the appearance of a contrivance to deprive the defendants Wood and Colton of their interests in the grants, franchises and property which were the subject

of the sale. The subsequent transactions, detailed in the affidavits, especially the return to the other defendants of their several interests, lends countenance to the apparent intention.

The motion to vacate the order appointing Mr. Morrisey as receiver, it is argued, should be denied because he has resigned; and the court, on the 31st of October, 1870, accepted his resignation, and appointed Felix McClosky in his place. I have not been able to ascertain from the papers that any notice was given of the application for a change of receivers. It was asserted by the defendants' counsel, on the argument, that McClosky "was surreptitiously substituted." It does appear, however, that the $5,000 in cash, received by Morrisey at the sale, was retained by himself, and applied upon a claim he professed to have for the unpaid price of an interest in the lottery business. It is objected, too, that the sale by Morrisey should not be disturbed at this late day, when the defendants have been so tardy in moving against it. They have, with due diligence, moved against the order appointing the receiver; and it appears not to have been their fault that no decision of the motion has hitherto been made. The defendants have also succeeded in setting aside the order confirming the sale; since which time they have used all proper diligence to vacate the sale itself. I think the time has come when the sale should be declared void; and that there has been no such change of interests by the receiver, the purchaser or the plaintiff as should prevent the vacation of the sale.

Another objection to interference with the order for a receiver, and with the sale, is that actions have been brought; one by Colton and Dickinson against the plaintiff and others, and another by Colton against all parties in interest; in which issues have been raised touching the validity of the Morrisey appointment, and of the sale to William L. Simmons; and it is contended that these issues, when brought to trial, will afford the best opportunity to ascertain the facts

on which the removal of the receiver and the vacation of the sale are claimed.

There is, indeed, much conflict of statement in the affidavits before me, especially with regard to the title, and the value of the interests of the several parties in the grants, franchises and property in question ; but there is little or no dispute as to the appointment of the receiver, and the time and manner of the sale. Nor is the *ex parte* character of those proceedings disputed. The proceedings were unjustifiable in their nature ; and the only shield that protects them is an *ex parte* order, obtained from a judge near midnight, and which was acted upon, *ex parte*, the next morning, when the overseer made the sale in the lobby of the Hoffman House. It may very well be that, if the order is allowed to stand, its validity cannot be questioned in a collateral action ; and, at all events, it is more proper that the motion to vacate it should be made in the action wherein it was granted. In the same connection it may also be remarked that the defendant, Wood, is not a plaintiff in either of the actions referred to, and has not lost any right thereby to make the motion in this action to vacate the receivership and the sale. The appointment of the receiver and the sale made by him were, under the circumstances, acts of bad faith, if not of fraud. The plaintiff should not hope to reap more than a temporary advantage from such proceedings ; and on the uncontradicted facts it is apparent that the receiver willingly lent himself to aid an unjustifiable sale.

But it is contended the lottery grants are not property in this state ; and anything connected with them is only a parasite, illegal and worthless ; that the state prohibits lotteries as common nuisances, and the courts cannot be invoked to aid them directly or indirectly ; also, that the moment the trust was revoked, the illegal business could not exist an hour, nor be protected or carried on by the receiver for a single day. Why, then, should a receiver have been appointed ? It has been correctly said, that when parties traffic in for

Simmons agt. Wood.

bidden things, and then break faith with each other, the law, whose mission it is to right the innocent and to enforce the performance of licit obligations only, will leave them to such mutual redress as their own standard of honor may award (*Boatner* agt. *Yarborough*, 12 *Louisiana Annual*, 251).

It is also a principle as old as the common law, that courts ought not to lend their aid in compelling the performance of contracts which arise *ex turpi causa*. Whenever a contract or transaction is tainted with turpitude, it cannot be enforced (*Lightfoot* agt. *Tenant*, 1 *Bos. & Puller*, 551; *Langton* agt. *Hughes*, 1 *Maule & Selwyn*, 593: *Pres. Merchants' Bank* agt. *Spalding*, 12 *Barb.*, 307; *Spalding* agt. *Preston*, 21 *Vt.*, 9; *Watson* agt. *Fletcher*, 7 *Grattan Va.*, 1; *Booth* agt. *Hodgson*, 6 *Term R.*, 405; *Hunt* agt. *Knickerbacker*, 5 *John.* 335).

In *Downs* agt. *Quarles*, *Littell's Select Cases (Kentucky)*, *p.* 491, the court said : " where two, in equal guilt, have agreed to game, the chancellor or court of common law ought not to interfere between them, further than to allow the possessor of the iniquitous gains to retain what he holds, and to inflict the appropriate penalties for violating the laws of society, provided by the statutes themselves." It was also well observed in *Abbe* agt. *Marr* (14 *Cal.*, 211), that " when the plaintiff asserts his own turpitude, he sends his case out of court. If, in attempting, by way of reprisal or otherwise, to surrender another, he becomes the victim of his own acts, it may become a question in morals or in honor which party is the more culpable. Courts of law entertain no discussion on the subject, but terminate the controversy by shutting their doors in the face of the intruder." It is sought to apply the principle of these and of similar authorities to the claims made by the defendants, Wood and Colton, in respect of the lottery grants, franchises, and property which are the subject of this action ; but does it not equally apply to the plaintiff; and what right had he, therefore, to call on the court to appoint a receiver ?

I think the plaintiff cannot call upon the court to apply the principle for the purpose of protecting the Morrisey receivership or sale. The plaintiff, the receiver and the purchaser were alike instruments, under the color of judicial sanction, in getting up a title to the property in question, against the claims of the defendants. · Whatever may be said of the lottery grants and franchises, there was other property covered by the order and made the subject of the sale. It is referred to in the complaint, and is specified in the deed of trust, as "certain printing-presses, plates, types, material appurtenant thereto, and other personal property," as set forth in the several assignments made to the trustees.

All this property is free from the taint of moral turpitude and is within the protection of law; although its chief value, probably, consisted in the use to which it was applied in the lottery business.

The lottery grants and franchises were based on certain statutes of Missouri, Kentucky, Delaware and Georgia, and were lawful grants and property according to the laws of those states. They were valuable grants in those states, and the business which they authorized was lawful there.

According to the laws of New York, lotteries are prohibited as contrary to morality and the public good. But this was not always the law here. The constitution of 1821 provided "No lottery shall hereafter be authorized in this state, and the legislature shall pass laws to prevent the sale of all lottery tickets within this state except in lotteries already provided for by law." The constitution of 1846 contains a similar provision. In 1820 the city of Albany was authorized to dispose of the public lands by a lottery (*Laws of* 1820, *p.* 224), and the policy of raising money by lottery for public purposes, such as for literary and benevolent institutions, continued to prevail in this state until 1833 (*Laws of* 1833, *p.* 484). Foreign laws are of no efficacy here *ex proprio vigore;* by comity only are they regarded, and the courts determine how far that comity shall extend. In *The Com-*

*monwealth of Kentucky* agt. *Bassford*, (6 *Hill*, 526), which was an action on a bond executed here, to be performed in Kentucky, conditioned for the faithful performance of duties enjoined by a law of Kentucky, authorizing the obligees to sell lottery tickets for the benefit of a college in that state it was held that as the bond was valid at the place where the condition was to be performed, the courts of this state should uphold it, notwithstanding our statutes against lotteries. Referring to the sanction which our state had formerly given to lotteries, especially for public purposes, chief justice NELSON, in that case, said: "It would be rather ungracious for our courts, under these circumstances, to refuse to uphold the contract within the rule of comity, on the ground that it was founded in moral turpitude." The bond in that case was a lawful contract according to the laws of Kentucky, where its condition was to be performed, and, therefore, within the rule of comity, it was treated as valid here, and the court in New York allowed an action to be prosecuted on it. The grants made by the several states named are lawful grants in those states. The franchises they confer would be protected as property there. While it must be admitted the business which they license could not lawfully be pursued within this state, still it would seem that when the grants are the subject of litigation in this state, the courts here, within the rule of comity, would extend to them protection as rights of property secured to their own-ers by the laws of the states which created them.

Lotteries are declared nuisances in the state of New York (1 *R. S.*, 665–672), and lotteries and the sale of lottery tickets are prohibited. (1 *Edm. Stat.*, 39). It is made a penal offence to vend a lottery policy, or any writing, card, paper or document, in the nature of a wager or insurance upon the drawing, or numbers to be drawn, in a lottery; and persons engaged in such illicit business are to be treated as common gamblers. (*Laws of* 1851, *chap.* 504; *Laws of* 1855, *chap.* 214; 4 *Edm. Statutes, p.* 40). But notwithstanding these pro-

Simmons agt. Wood.

hibitions of lotteries, and the business connected with lotteries in this state, which are proper provisions to prevent persons from being seduced into gaming and wagering and from upholding the hazards of lotteries, it does not follow that lottery grants and franchises are not valuable property in the states where lotteries are allowed. The plaintiff has himself asserted, in his complaint, that these lottery grants, and the business connected with them, are fully legalized in and by the states whose legislatures made the grants, and that, as property, they have the same nature as other personal property, and have been, and "are of great pecuniary value." He cannot, therefore, in this action, be heard to say that these grants, because illegal in New York, have no property-quality or pecuniary value in the states where they are lawful, which by comity will not be treated as property here.

The plaintiff's motion to vacate the order of December 16, 1869, appointing a receiver, is granted; and the sale made by the receiver on the next day is set aside and declared void, with ten dollars costs of the motion, to abide the event.