CHARLES C. ORCUTT *vs.* MYRON E. NELSON.

A sale of intoxicating liquors in another state to be delivered in this state, if made without any view to their resale here, contrary to law, is valid; and the seller may maintain an action in the courts of this state to recover the price thereof, notwithstanding the provision of *St.* 1852, *c.* 322, § 19, that "no action of any kind shall be had or maintained, in any court in this commonwealth, for the recovery or possession of intoxicating liquors, or the value thereof except such as are sold or purchased in accordance with the provisions of this act."

Orcutt *v.* Nelson.

An order for goods, sent by letter from this commonwealth to another state, was executed by the successor in business of the person to whom it was addressed, and the goods forwarded by a carrier, and accepted on their arrival, and the freight paid, by him who ordered them. *Held,* that his assent related back to the original order, and that the sale was complete on delivery to the carrier in the other state.

ACTION OF CŌNTRACT to recover the price of brandy, gin, rum, wine and spirits, sold and delivered by the plaintiff to the defendant.

The answer alleged that, if these articles were sent at all by the plaintiff, they were sent without the defendant's order, and subject to the order of the plaintiff; and that they were spirituous liquors and sold contrary to the *St.* of 1852, *c.* 322, regulating the sale of spirituous and intoxicating liquors, the defendant not being an agent appointed by the selection of Colerain, (where he resided,) to sell for medicinal, chemical or mechanical purposes.

At the trial in the court of common pleas, before *Bishop,* J. there was evidence that in January 1853, the defendant sent by mail an order for a bill of liquors to James F. Orcutt, a brother of the plaintiff, at Hartford, Connecticut; that James F. Orcutt, when the order arrived, being about to remove to New York, had left business at Hartford, and sold out to plaintiff; that the letter, with the order, was taken out of the post-office by a former clerk of James F. Orcutt, and handed to the plaintiff; that the plaintiff showed it to James F. Orcutt, who either assented or made no objection to the filling of the order by plaintiff; that the plaintiff filled the order, and on the 20th of January 1853 placed the liquors on board the railroad train at Hartford, directed to the defendant at Greenfield, and on the same day wrote and mailed a letter addressed to the defendant at Colerain, informing him that James F. Orcutt had sold out to the plaintiff, and that he had filled the order, and forwarded the liquors by railroad to Greenfield, and inclosing a bill of them; and this letter was received by the defendant, but on what day did not appear. The liquors arrived at Greenfield on the 26th of January, and were taken away and the freight paid, by the defendant, on the 27th. The defendant took the liquors to his house, a tavern in Cole-

rain, placed them, or a part of them, behind the bar and tapped them. But it did not appear otherwise than from the fact of their being tapped, that any of the liquor was ever drawn, except on one occasion, when it was drawn for and drank by the plaintiff and his agent when at Colerain.

Thomas R. McGee, a witness for the defendant, testified that he was present at a conversation between the plaintiff and defendant at Colerain, in the spring of 1853, and the defendant then told the plaintiff that James F. Orcutt had filled the order; that he did not want both bills of liquor, and could not take the liquors sent by the plaintiff, and offered to take them back to the station at Greenfield or elsewhere, as the plaintiff should direct, if the plaintiff would pay him for them and what he had paid for freight; that the plaintiff urged the defendant to take the liquors, said he need not take them unless he wished to do so, and finally requested him to keep the liquors on storage, subject to the plaintiff's orders. This conversation was denied by the plaintiff, and on this point the evidence was conflicting.

The evidence further tended to prove that subsequently the defendant, when at Hartford, offered his note at six months for the amount of these liquors. This, as the plaintiff contended, was an offer to settle, and as the defendant contended, was an offer to purchase the liquors. The plaintiff declined.

On this evidence the defendant's counsel contended, and requested the court to instruct the jury, " 1. That the sale of liquors, if made at all, was made in this State, and that an action for the price could not be maintained in our courts. 2. That if the liquors were sent by the plaintiff under the circumstances stated, and the defendant, having previously received the plaintiff's letter, and knowing that the liquors came from the plaintiff, received them, supposing that all was right between the plaintiff and James F. Orcutt, and the said James F. subsequently filled the order, and the defendant, after receiving the liquors from the said James F., within a reasonable time notified the plaintiff of the facts, and offered to return the liquors sent by him, he had a right to return them, and the action could not be maintained. 3. That if the liquors were sold by the plaintiff to the defendant

in Hartford on a credit, yet no action for the price could be maintained in the courts of this State.

" The court did not so instruct the jury, but instructed them, 1. That if the order was sent by the defendant to James F. Orcutt, and filled by the plaintiff, with the assent of James F. Orcutt, and the plaintiff delivered the liquors to the railroad company at Hartford, and on their arrival at Greenfield, the defendant, having first received the plaintiff's letter, and knowing that the liquors came from the plaintiff, took them from the station, paid the freight, and carried them to his tavern in Colerain, the liquors were sold at Hartford, the sale being complete on delivery of the liquors by the plaintiff to the railroad company in Hartford, and if the sale was made in Hartford the action could be maintained. 2. That the defence, if made out, was a perfect answer to the action, that if the defendant was not apprized of the change between the Orcutts, and supposed the goods to be from James F. Orcutt, and when informed to the contrary, disclaimed them, and gave seasonable notice to the plaintiff that he did not intend to take them, or if the plaintiff subsequently agreed that the defendant need not take the liquors, and requested the defendant to keep them on storage for him, and subject to his order, the action could not be maintained; and that, if the jury believed the testimony of McGee, the plaintiff had no right to recover."

The jury found for the plaintiff, and the defendant alleged exceptions to these instructions.

*D. W. Alvord,* for the defendant. If the sale of the liquors had been made in Connecticut, no action for the price could be maintained in the courts of this commonwealth. (1.) Because the legislature, in the exercise of their constitutional power, have expressly prohibited the maintenance of any action " for the recovery or possession of intoxicating liquors, or the value thereof, except such as are sold or purchased in accordance with the provisions of this act," that is to say, by town agents or licensed persons. *St.* 1852, *c.* 322, § 19. This case is within the object of the statute, which is to prevent the use of liquors in this commonwealth as a beverage. (2.) Because it would be

contrary to the public policy of the commonwealth, to its inter-
ests, and the interests of its citizens, to enforce such contracts;
and because it is a sale in another state, to be delivered in this,
of merchandise, the sale of which here is forbidden. Story
Confl. Laws, §§ 244 – 252. *Greenwood* v. *Curtis*, 6 Mass. 358.
*Blanchard* v. *Russell*, 13 Mass. 6.

But the sale was not made in Connecticut, but in this state,
and therefore clearly prohibited by the statute. The general
rule, that the delivery of goods by the vendor to a carrier, to be
carried to the vendee, vests the property in the vendee, applies
only to cases of goods ordered by the vendee of the vendor.
These goods were not ordered of the plaintiff; so that there was
no consent of the parties to the sale, at the time of the delivery
to the carrier, or while the goods were in Connecticut. And
this consent is necessary to a sale. Long on Sales, (2d Amer.
ed.) 5, 6.

*D. Aiken & C. Allen*, for the plaintiff. The *St.* of 1852, c. 322,
§ 19, does not apply to sales not made within the State. Had
James F. Orcutt consigned these goods from Hartford to the
defendant at Colerain, this would have been the common case
of a sale executed out of the State, by delivery to the carrier.
*Sortwell* v. *Hughes*, 1 Curt. C. C. 244. *Territt* v. *Bartlett*, 21
Verm. 184. *M'Intyre* v. *Parks*, 3 Met. 207. *Putnam* v. *Tillot-
son*, 13 Met. 517. Story on Contracts, § 509, & cases cited. The
consent of James F. Orcutt to the filling of the order by the
plaintiff, and defendant's taking the goods from the carrier with
the knowledge that the order was so filled by the plaintiff, are
equivalent to a previous order from the defendant to the plain-
tiff; and such assent of the defendant is a waiver of his right to
say that the order was not fulfilled by the person to whom it
was addressed; and the waiver relates back to the consignment
at Hartford.

SHAW, C. J. This action is brought to recover the price of
brandy and other spirituous liquors, alleged to have been sold by
the plaintiff to the defendant, since the passage of the act of
1852, c. 322, and the defence is founded on § 19 of that statute.
The provision stands thus: " No action of any kind shall be had

or maintained, in any court in this commonwealth, for the re-covery or possession of intoxicating liquors, or the value thereof, except such as are sold or purchased in accordance with the provisions of this act."

It is very manifest that this statute does not prohibit all actions for the value of liquors; the act itself contains some qualifica-tions. The question is, what are the true limitations? It has been strongly intimated, if not decided, that it does not prohibit an action of replevin or trover to recover liquors wrongly taken or detained, or their value in damages. *Fisher* v. *Mc Girr, ante,* 47. Other cases may easily be imagined, where it would not apply. Liquor sold by a licensed manufacturer, to be exported, is a familiar instance. Again; suppose a ship master should take a cargo from France to New Orleans, consisting in part or in whole of brandy and wine, and there sell it, and purchase a cargo of cotton for Boston. Could he not have an action in the courts of this state for brandy so sold? The words are, " except such as are sold or purchased in accordance with the provisions of this act." It cannot be limited to sales by and to town agents; such a restriction would give an operation to the act much beyond the apparent intent of the legislature. Are not all sales made in accordance with the act, if they are not prohibited by the terms of the act, or by necessary implication from those terms It cannot be presumed that the legislature intended to extend their prohibition beyond this, and give the enactment an extra-territorial operation, to prohibit and vacate sales made out of its territorial jurisdiction. The court are therefore of opinion that a sale of liquors in Connecticut, without any fraudulent view to their resale in Massachusetts, contrary to law, was not unlawful, and that an action may be maintained, in this commonwealth, for the price of liquors so sold.

The remaining question is, whether the contract of sale, effected by correspondence, was made and completed in Massa-chusetts. This is a mixed question of law and fact. It appears that the defendant, at Colerain, addressed a letter by mail to James F. Orcutt, a brother of the plaintiff, at Hartford, Con-necticut, containing an order for the liquors; that James had

quitted the business, and the plaintiff had succeeded him, and that the letter was handed to the plaintiff; that he put up the goods according to the order, directed them to the defendant at Greenfield by the railroad cars, and addressed a letter to the defendant at the neighboring town of Colerain, informing him that he had supplied the goods in place of his brother; that the defendant thereupon proceeded to the railroad station, paid the freight, and took the goods home to his own house. We lay out of the case the testimony of Thomas R. McGee, because the court instructed the jury that if the facts testified of by him were believed, the defendant would be entitled to a verdict; the jury, by their verdict for the plaintiff, in effect found that he was not entitled to credit. There is therefore no evidence, that the order for the liquors was furnished by the original correspondent, James Orcutt, or that the plaintiff offered to take back the goods, or requested the defendant to retain them on storage on his account.

Independently of those facts, it is the case of a country merchant, sending an order for goods to a person supposed to be in business; but in consequence of a change, the order is executed by another person. Upon this alone, the defendant would not have been bound, because he had made no proposal to the plaintiff, and he had a right to decide for himself with whom he would deal. But on being notified of this change, he assents to it and ratifies it; such ratification relates to the original order, and gives it the same effect, as if originally addressed to him. The letter accompanying the invoice, addressed to the defendant by the plaintiff, distinctly informed the defendant of the execution of the order by the plaintiff, and of his forwarding of the goods by the railroad to Greenfield. The receipt of the goods at Greenfield, pursuant to this notice, and payment of the freight, are decisive proof of the assent of the defendant to the change in the execution of the order, and a ratification of the act of the plaintiff. It then becomes the ordinary case of a contract of sale, where goods are ordered by one desiring to purchase of another, at a distance, to be forwarded, and there is no special order or particular usage to the contrary, a delivery to a common carrier completes the contract of sale, vests the prop·

erty in the vendee, and consequently the goods, during the transit, are at the risk of the vendee. The only question there can be, is whether the sale was complete, before the defendant gave his assent to the change in the execution of the order, and if that assent completed the contract, whether, as that was given in Massachusetts, it might be construed to be a sale there. If this were an agreement only, a mere executory contract, taking its effect from the meeting of the two minds, it might be, and sometimes is, a difficult question, to determine the time and place at which the agreement is complete and binding, especially where a contract is effected by correspondence. But here the question is of an executed contract, of a sale made, by which a right of property has passed. Now the law is settled, that however the negotiation is conducted, the sale is complete and the property passes by delivery, and delivery to the carrier is in law a delivery to the vendee. Were it otherwise, it might be contended, had the original order been executed according to the proposal contained in it, that as the order is an essential part and the foundation of the contract of sale, and was written in Massachusetts, the sale was made in Massachusetts; which could not be maintained. By considering the defendant's assent to the substitution of the plaintiff for his brother, as the seller of the goods, as relating back, and qualifying the original order, the sale by the plaintiff to the defendant was complete, when the goods were delivered on board of the cars, to be forwarded to the defendant. The instructions to the jury were conformable to these views ; it is not necessary to state them at large.

*Exceptions overruled.*