## B. A. FEINEMAN, *et al.*, v. FRANK SACHS.

| 33 | 621 |
| 160 | 756 |
| 60 | 757 |
| 33 | 621 |
| h64 | 710 |
| 33 | 621 |
| 66 | 127 |

1. INTOXICATING LIQUOR; *Contract, When Not Enforced.* The courts of our state are not bound to recognize or enforce a contract which is in contravention of our statutes, even though it may be valid in the state where it is made. And if a wholesale liquor dealer in Missouri enters into an arrangement with a citizen of Kansas to sell and ship intoxicating liquors to him in Kansas, for the express purpose of enabling the purchaser there to resell the liquors contrary to the laws of the state, and actively aids the purchaser in the illegal traffic, he is not entitled to the assistance of our courts in recovering the price of the liquors thus sold.

2. SALE, *When Void and Recovery Defeated.* Mere knowledge of the illegal purpose of the buyer is not sufficient to invalidate a sale made in Missouri, which is in conformity with the laws of that state. In order to render the sale void, and defeat a recovery of the price of the liquors, there must be some participation or interest of the seller in the illegal transaction.

3. ——— It is error for the court to give an instruction founded upon facts that are not in proof.

*Error from Shawnee District Court.*

ACTION by *B. A. Feineman & Co.* against *Frank Sachs*, to recover the price of certain intoxicating liquors. Trial at the April Term, 1883, and judgment for costs against plaintiffs. They bring the case to this court. The opinion states the material facts.

*W. A. S. Bird,* for plaintiffs in error..

*G. C. Graves,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: B. A. Feineman & Co. brought this action against Frank Sachs, to recover the price of a quantity of intoxicating liquors sold by them to the defendant, who was a saloon keeper at Topeka, Kansas. The plaintiffs are wholesale liquor dealers at Kansas City, Missouri, and they allege that on the 17th day of August, 1881, they sold on credit and shipped a bill of liquors priced at $223.33, to one C. G. Funk, at Topeka; that a short time after this sale, Funk sold out his business to the defendant Sachs, when he assumed the payment of Funk's indebtedness to the plaintiffs; that afterward the defendant purchased liquors directly from plaintiffs of the amount of $75.75, making a total indebtedness alleged to be due from defendant to plaintiffs of $299.08; that the defendant had made several payments on account to the amount of $150, leaving a balance due to the plaintiffs of $149.08, for which they asked judgment.

The defendant denied the assumption of Funk's indebtedness to plaintiffs, and claimed that when he bought Funk out a number of outstanding accounts were left by Funk with him for collection, with the agreement that the amount collected upon them should be paid to Feineman & Co. upon the bill that Funk owed them. He claimed that on these accounts he collected about $75, all of which was paid over to the plaintiffs, and that the balance of $150, which he had remitted to the plaintiffs, was in full payment of the liquors purchased by

himself from them. He made the further defense, that the liquors were sold by the plaintiffs at Topeka, Kansas, contrary to the laws of this state, and with full knowledge that they were to be resold by the defendant and in violation of our law, and therefore no recovery could be had for their price.

On the trial, a general verdict was returned by the jury in favor of the defendant.

One of the errors assigned by the plaintiffs is upon the instructions that were given to the jury. The court directed the jury that if the plaintiffs' agent took an order from the defendant for intoxicating liquors to be transmitted to the plaintiffs at Kansas City, Missouri, and there filled at their option, and to be delivered at that place to the defendant, the the plaintiffs would be entitled to recover the amount unpaid thereon; but that if the sale and delivery of the liquors was made at Topeka, Kansas, no recovery could be had unless the plaintiffs had a permit authorizing such sale. The court then gave the following instruction:

"I further instruct you, that if you find as a fact that the plaintiffs' agent took from the defendant an order for intoxicating liquors in the city of Topeka, with the understanding and agreement that said order should be transmitted to plaintiffs in Kansas City, Missouri, to be there filled subject to their choice and option, and that said liquors were delivered to the defendant on the cars at Kansas City, Missouri, to be brought into this state; and if you further find that at the time of such transaction it was the understanding and agreement between the defendant and plaintiffs' agent that such liquors were to be brought into the state of Kansas, and here resold in violation of the laws of this state; and if you further find that the agreement of transmission and filling of the order at the plaintiffs' option, and the delivery of the liquors to the defendant on the cars at Kansas City, Missouri, was so made as a scheme or device for evading the laws of Kansas respecting the sale of intoxicating liquors in this state, and that such liquors were so furnished defendant in pursuance of such scheme or device to be resold in Kansas in violation of the laws of this state, then you must find for the defendant."

Exception is taken to this instruction, upon two grounds: First, that it is not a correct statement of the law; and second, that there was no evidence in the case upon which to base such an instruction.

As an abstract proposition of law, we think the instruction is not erroneous. The plaintiffs claim that the validity of a sale and delivery of goods made in Missouri is to be determined by the laws of that state, and that as the contract in question conformed to the laws of Missouri, it cannot be affected by our laws, and must be enforced in our courts. It is true, the general rule is that the validity of a contract is to be determined by the law of the place where it is made, and if it is valid by the laws of that state it will be enforced in another as an act of comity, even though it may not entirely consist with the laws of the state in which enforcement is sought. To this rule there are important exceptions, one of which is, that no state is bound to enforce a contract that is in contravention of its laws and which has been entered into in fraud or evasion of such laws.

It has been said that—

"The exception applies to cases in which the contract is immoral or unjust, or in which the enforcing it in a state would be injurious to the rights, the interest, or the convenience of such state or its citizens. This exception results from the consideration that the authority of the acts and contract done in other states, as well as the laws by which they are regulated, are not, *proprio vigore,* of any efficacy beyond the territories of that state, and whatever effect is attributed to them elsewhere, is from comity, and not of strict right. And every independent community will, and ought to, judge for itself how far that comity ought to extend. Contracts, therefore, which are in evasion or fraud of the laws of a country, or of the rights or duties of its subjects, contracts against good morals, or against religion, or against public rights, and contracts opposed to the national policy or national institutions, are deemed nullities in every country affected by such considerations; although they may be valid by the laws of the place where they are made." (Story on Conflict of Laws, §244.)

Opinion of the Court.

And citizens of another state who enter into an arrangement to furnish liquor with the intention and for the purpose of enabling a citizen of Kansas to violate our laws, are not entitled to any greater privilege than any one of our own citizens guilty of the same wrong. If, then, the transmitting of the order for intoxicating liquors to Kansas City, Missouri, and the delivering of them upon the cars at that place, was, as stated by the court, a mere scheme or device of the parties to evade the laws of Kansas prohibiting the sale of intoxicating liquors, and the plaintiffs encouraged and assisted the defendant in the illegal transaction, the courts of the state will not aid the plaintiffs in recovering the fruits of such wrongful act.

But the other exception to the instruction is, in our view, well taken. No facts are found in the evidence brought here, upon which to base the instruction, and it was therefore misleading and erroneous. The most that can be claimed, as shown in the testimony, is that the plaintiffs' agent knew that the defendant had sold liquors in violation of law, and that the intention of the defendant was to dispose of those purchased from plaintiffs in the same way. There is no pretense that any act was done by the plaintiffs to promote the illegal transaction, or that they shared in its fruits beyond the taking of the order and sale of the goods for their value in the state of Missouri. It does not appear that anything was said or done by the plaintiffs or their agent, indicating an arrangement or conspiracy with the defendant to evade the laws of the state, or with a view of facilitating and assisting the defendant in the illegal sale of the liquor, or in furtherance of his unlawful design; and while the defendant at the time of the purchase may have intended to do an unlawful business in Kansas, and that purpose may have been communicated to and known by the plaintiffs, yet the defendant might afterward change his purpose and make a proper and legal disposition of the liquors. But mere knowledge of the illegal purpose of the buyer is not sufficient to invalidate a sale made in Missouri, and which is in conformity with the laws of that state. In order to render the sale void and defeat a recovery

40—33 KAS.

of the price of the liquors, there must be some participation or interest of the seller in the act itself. (*Hill v. Speer*, 50 N. H. 253; *Holman v. Johnson*, Cowper, 348; *Gaylord v. Soregan*, 32 Vt. 110; *Aiken v. Blaisdell*, 41 id. 656; *McIntire v. Parks*, 3 Met. 207; *Smith v. Godfrey*, 8 Foster, 379; *Orcutt v. Nelson*, 67 Mass. 536; *President &c. of the Merchants Bank v. Spalding*, 12 Barb. 302; *Tracy v. Talmadge*, 14 N. Y. 162.)

If, however, there has been any participation on the part of the plaintiffs, as for instance, if the liquors were packed by the plaintiffs in such a manner as to conceal the contents of the package, and thus enable the defendant to accomplish his unlawful purpose, no recovery can be had; and if the illegal disposition of the goods by the purchaser in any way entered into the contract, and a greater price was agreed to be paid for them; or if the plaintiffs were to derive any advantage or share in the fruits of the defendant's wrong, the contract should be held void, and not enforceable in our courts.

But as there was no testimony in the case that the plaintiffs participated, or were interested in the illegal sale of the goods, the instruction cannot be sustained. It follows that the judgment of the district court must be reversed, and the case remanded for a new trial.

All the Justices concurring.