SAMUEL BOWMAN DISTILLING COMPANY, *a Corporation*, v. A. R. NUTT.

INTOXICATING LIQUOR; *Action for Purchase-Price — When Defeated, When Not.* Mere knowledge by the vendor of goods lawfully sold in one state that the vendee intends to use them in violation of law in another state, will not defeat an action brought in such other state by the vendor

against the vendee for the purchase-price of the goods. In order that the action in such a case may be defeated, it must be further shown that the vendor sold the goods for the purpose that the law should be violated, or that he had some interest in its violation, or that he participated in some manner in the unlawful purpose. (*Feineman v. Sachs,* 33 Kas. 621.)

*Error from Atchison District Court.*

ACTION brought by *The Samuel Bowman Distilling Company,* a corporation, against *A. R. Nutt,* before a justice of the peace of Atchison county, Kansas, to recover $113.42, for intoxicating liquors sold and delivered by the plaintiff to the defendant. With the plaintiff's bill of particulars, it filed two exhibits, as follows:

### EXHIBIT A.

No. 22.—ATCHISON, Mch. 9, 1883.—*Bowman Distilling Company, St. Louis, Mo.:* We have this day ordered through your Mr. Schullman, following goods, to be shipped by Missouri Pacific at lowest rates:

|  |  |
|---|---|
| 1 B. Millwood, Spring 81 | $1 75 |
| 5 G. Sweet Catawba | 1 00 |
| 10 G. Calif. Riesling | 1 25 |
| 12 Oporto Wine | 1 90 |

Which please forward to us, and for which we agree to accept draft at 90 days from date of shipment.

Yours respectfully, A. R. NUTT.

### EXHIBIT B.

ST. LOUIS, Mch. 13, 1883.—A. R. Nutt, Atchison, Kas., bought of Bowman Distilling Company, ninety days, or 3 per cent. off if paid within 10 days:

|  |  |
|---|---|
| 1 brl. Millwood, Spring 81, 40½ galls., $1.75 | $70 87 |
| 1 keg, .75, Sweet Catawba, 5 galls., at $1 | 5 75 |
| 1 keg, $1, Calif. Riesling, 10 galls., $1.25 | 13 50 |
| $\frac{1}{10}$ cask Oporto Port, 12 galls., $1.90 | 22 80 |
| Cartage | 50 |
|  | $113 42 |

A trial was had before the justice of the peace, and judgment was rendered in favor of the plaintiff and against the defendant, and the defendant appealed to the district court. At the February Term, 1884, a trial was had before the district court, without a jury, and the court made the following findings and conclusions, to wit:

"CONCLUSIONS OF FACT.

"1. On March 9, 1883, the plaintiff was, and ever since it has been, a corporation, duly organized and existing under the laws of the state of Missouri, having its principal office and place of business at St. Louis, Missouri, and engaged as a wholesale dealer and jobber of whiskies, wines and other intoxicating liquors, which business was on March 9, 1883, and ever since has been, lawful in the state of Missouri.

"2. On March 9, 1883, and for some considerable time afterward, the defendant, A. R. Nutt, was the keeper of a billiard-hall and saloon combined, in the city of Atchison, in Atchison county, Kansas, and his business in part was the sale of intoxicating liquors in said saloon without having any permit from the probate judge therefor, and for other than medical, scientific and mechanical purposes; and such intoxicating liquors were sold by said A. R. Nutt, by the drink, over a bar in said saloon, and so far as his business included the sale of intoxicating liquors, it was wholly unlawful.

"3. On March 9, 1883, Henry Shullman, the duly-authorized traveling agent and salesman of the plaintiff, called upon said A. R. Nutt at said billiard-hall and saloon at Atchison, and solicited said A. R. Nutt to agree to purchase and to order from the plaintiff intoxicating liquors, and said A. R. Nutt then and there agreed to purchase the certain intoxicating liquors sued for in this action, at certain agreed prices; and said agent agreed to order said liquors from the plaintiff at St. Louis, and to have them forwarded to said A. R. Nutt at Atchison, by railroad; said order, however, to be subject to the approval of the plaintiff. Said agent thereupon wrote and the said A. R. Nutt signed the instrument, a true copy of which is annexed to the plaintiff's bill of particulars as exhibit 'A,' and said agent forwarded said instrument to the plaintiff at St. Louis. It was the understanding of the said agent and said A. R. Nutt that the plaintiff was to select from its stock of liquors at St. Louis the goods ordered, which were to correspond with certain samples shown to said A. R. Nutt by said agent at the time, and to ship the same at St. Louis by railroad, consigned to said A. R. Nutt at Atchison.

"4. Said agent of the plaintiff knew at said time the nature of the business of said A. R. Nutt, and that said liquors were ordered for the purpose of unlawfully selling the same at retail over said bar at said place in Atchison, for use as beverages, and not for medical, scientific and mechanical purposes, nor for any of said last three named purposes.

"5. The plaintiff duly filed said order, and shipped said whiskies and wines consigned to said A. R. Nutt at Atchison, and he received the same, except that about four gallons of the California wine ordered at $1.25 per gallon leaked out of the cask, and the plaintiff's said agent, who afterward called again upon said A. R. Nutt to solicit another order for liquors, agreed to suffer the loss of said leakage. A true account of the whisky and wines so shipped appears as exhibit 'B,' attached to the plaintiff's bill of particulars.

"6. Said A. R. Nutt sold said whisky and wines in the usual course of his business as aforesaid; but he has never paid for the same nor any part thereof, although payment has often been demanded of him by the plaintiff.

"CONCLUSIONS OF LAW.

"1. The enforcement of said contract for the sale of said intoxicating liquors under the circumstances of this case would be against the public policy of this state.

"2. The plaintiff is not entitled to recover in this action.

"3. The defendant is entitled to judgment against the plaintiff for costs."

Upon these findings and conclusions the court below rendered judgment in favor of the defendant and against the plaintiff for costs, and to reverse this judgment the plaintiff brings the case to this court.

*Jackson & Royse,* for plaintiff in error.

*Tomlinson & Eaton,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in Atchison county, by the Samuel Bowman Distilling Company, a corporation, against A. R. Nutt, for intoxicating liquors previously sold and delivered by the plaintiff to the defendant. The plaintiff is a wholesale liquor dealer at St. Louis, Missouri, and its sales there made of intoxicating liquors are legal and valid. The defendant is a saloon-keeper in Atchison, Kansas, and his sales there made of intoxicating liquors are illegal, and contrary to the statutes of Kansas. The liquors sold in the present case were first ordered by letter by the defendant at Atchison, Kansas, at the instance of the plaintiff's agent, who

was then in Atchison and had knowledge of the kind of business in which the defendant was engaged, and presumably had knowledge also of the laws of Kansas, and therefore had knowledge that the defendant was engaged in the sale of intoxicating liquors in violation of law, and that he desired to purchase the liquors in the present case for such unlawful purpose. The order of the defendant for the liquors was subject to the approval or disapproval of the plaintiff at St. Louis, Missouri. The plaintiff, however, approved the order, selected the liquors from its stock of liquors at St. Louis, Missouri, and then delivered the same to a railroad company, to be by it transported to the defendant at Atchison, Kansas, at the defendant's cost, and the defendant was to pay the plaintiff the value of such liquors at the end of 90 days, which time elapsed before this action was commenced, and the defendant had not then and has not since paid for such liquors. The defendant claims that the plaintiff sold the liquors to him knowing that he would again sell them in Kansas in violation of the laws of Kansas; and therefore he claims that the sale, though legal in Missouri, was illegal and void as to Kansas, and that the plaintiff cannot recover in Kansas anything from the defendant for the liquors sold and delivered by the plaintiff to the defendant.

The plaintiff constructively had knowledge, in Missouri, through the actual knowledge of its agent, in Kansas, that the defendant purchased the liquors for the purpose of unlawfully selling the same in Kansas; but there is no pretense that the plaintiff in any manner participated in this unlawful purpose, and no pretense that it was to derive any benefit from any of the illegal acts perpetrated, or intended to be perpetrated, by the defendant in Kansas. So far as appears from the record, the plaintiff sold these liquors in the same manner and for the same prices as it sells like liquors to its other customers, who purchase the same for lawful and legitimate sale or use. Nor did the plaintiff pack the liquors in such a manner as to conceal their real character, or pack them in any manner different from the manner in which it packs like

goods for its other customers, who purchase for lawful and legitimate purposes. So far as anything is shown in the record, it sold the goods for the same prices and packed them in the same manner that it would sell and pack like goods sold to legitimate druggists in Kansas, who have permits to sell intoxicating liquors and who do sell them only in accordance with the statutes of Kansas. Under all the authorities, the sale of these liquors was a sale in Missouri and not a sale in Kansas; and the sale was legal and valid in Missouri. Therefore, the only thing that can be urged against the plaintiff's right to recover in this action is its constructive knowledge of the defendant's wrongful intent to sell the intoxicating liquors in an unlawful manner and for an unlawful purpose. Now mere knowledge by the vendor of goods lawfully sold in one state that the vendee intends to use them in violation of law in another state, will not defeat an action brought in such other state by the vendor against the vendee for the purchase-price of the goods. (*Feineman v. Sachs*, 33 Kas. 621, 625, 626, and cases there cited, to wit: *Hill v. Spear*, 50 N. H. 253; *Holman v. Johnson*, 1 Cowper, 341; *Gaylord v. Soragen*, 32 Vt. 110; *McIntyre v. Parks*, 44 Mass. 207; *Smith v. Godfrey*, 8 Foster, 379; *Orcutt v. Nelson*, 67 Mass. 536; *President &c. v. Spalding*, 12 Barb. 302; *Tracy v. Talmage*, 14 N. Y. 162.) See also upon this same subject, and supporting the foregoing proposition, the following authorities: *Webber v. Donnelly*, 33 Mich. 469; *McKinney v. Andrews*, 41 Tex. 363; *Dater v. Earl*, 69 Mass. 482; *Tegler v. Shipman*, 33 Iowa, 195; *Pellecat v. Angell*, 2 Crompt., Mees. & Rosc. (Eng.— Exch.), 311; *Sortwell v. Hughes*, 1 Curtis U. S. C. C. 244. About the only authorities which are seemingly opposed to the foregoing proposition are the following: *Territt v. Bartlett*, 21 Vt. 184; *McConihe v. McMann*, 27 id. 95; *Webster v. Munger*, 74 Mass. 584; *Adams v. Coulliard*, 102 id. 167; *Davis v. Bronson*, 6 Iowa, 411; *Second Nat. Bank v. Curren*, 36 id. 555; *Banchor v. Mansel*, 47 Me. 58. But these authorities last cited do not furnish much opposition to the general doctrine above enunciated. The Vermont decisions, for instance,

make a distinction as between mere knowledge by the vendor of the illegal purpose of the vendee, and knowledge *with the intent by the vendor to assist in carrying out such illegal purpose.* See 21 Vt. 189, 190; 27 Vt. 99; and the later case of *Gaylord v. Soragen,* 32 Vt. 112, where the following language is used:

" Mere knowledge by the vendor of goods selling them in a foreign state, that the vendee intends to use them in violation of the laws of this state, is not sufficient to invalidate the contract, when it is sought to be enforced in our courts. Our own courts have recognized this rule, ( *McConihe v. McMann,* 27 Vt. 95;) and it is now generally adopted in this country and in England, though the contrary doctrine has received the support of some eminent judges and jurists."

The decisions in Massachusetts, reported in 74 Mass. 584, and 102 id. 167, do not purport to overrule the previous decisions made in that state, but attempt to make a distinction. It is not held in that state that knowledge alone of the intended illegal sale will defeat the action, but it is knowledge of such intended illegal sale " with a view" that the intended illegal sale shall be consummated, ( 74 Mass. 584;) and " reasonable cause of belief" of such intended illegal sale is not sufficient; ( 102 Mass. 167.) The decisions in Iowa are made under a special statute; but even in that state it is held that mere knowledge of the law alone will not render the contract invalid, ( *Second Nat. Bank v. Curren,* 36 Iowa, 555;) and in the case of *Tegler v. Shipman,* 33 Iowa, 195, 200, it is stated that it is not held that mere knowledge on the part of the seller of the intended violation of the laws by the purchaser would necessarily vitiate or avoid the contract. The case of *Banchor v. Mansel,* 47 Me. 58, is also decided under an express statute. But in that case it was merely held that knowledge on the part of the vendor *and* " acts beyond the mere sale which aided the purchaser in his unlawful design," would defeat the vendor's action. (See also *Torrey v. Corliss,* 33 Me. 333.)

It may be urged with much reason that knowledge alone by the vendor of the intended unlawful use of the property by the vendee, should defeat the vendor's action against the vendee

for the purchase-price of goods sold and delivered, but the great weight of authority is on the other side; and we have chosen to follow the authorities. Knowledge alone by the vendor in such cases is not sufficient. In order that the action by the vendor in such cases may be defeated by the vendee, it must further be shown that the vendor sold the goods for the purpose that the law should be violated, or that he had some interest in the violation of the law, or that he participated in some manner in the unlawful purpose. In fact, courts do not like to relieve parties from their contracts after the contracts have been executed and performed on the other side, and after the parties asking to be relieved have received and enjoyed all the fruits and benefits which they expected to receive or enjoy from their contracts. And especially courts do not like to relieve those parties in such cases who have committed the principal wrongs themselves, and who plead their own wrongs for the purpose of being so relieved. Besides the distinction made between mere knowledge and knowledge with something more, there is also a well-recognized distinction between executed and executory contracts.

*Intoxicating liquor; action for purchase-price—when defeated, when not.*

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendant upon the special findings of fact made by the court below.

All the Justices concurring.